**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HEARTLAND PAYMENT SYSTEMS, INC., | : | CIVIL ACTION NO. 06-2811 (MLC) |
|  | : | **MEMORANDUM OPINION** |
| Plaintiff, | : |  |
| v. | : |  |
| MERCHANT SERVICES OF AMERICA, CORP., and MICHAEL MOUYAL, | : |  |
| Defendants. | : |  |

**COOPER, District Judge**

This matter comes before the Court on (1) a motion for
attorneys' fees and expenses by plaintiff Heartland Payment
Systems, Inc. ("Heartland") and (2) a separate motion by Heartland
requesting that the Court hold defendant Michael Mouyal ("Mouyal")
in contempt.  (Dkt. entry nos. 28 & 33.)  Heartland requests
attorneys' fees and expenses in the amount of $160,979.11.[1]
Heartland also requests that the Court order Mouyal to pay
$70,000, $10,000 for each of the seven alleged violations of the
final judgment with permanent injunction ("final judgment").
(Dkt. entry no. 33-1.)  For the reasons stated in this memorandum
opinion, the Court will grant the motion and separate motion and

---

[1]     Heartland requested $146,125.63 in fees and expenses in
the motion for attorneys' fees (dkt. entry no. 28) but submitted
a supplemental certification documenting an additional $14,853.48
in fees and expenses incurred by the time the matter was fully
briefed. (Dkt. entry no. 45.)

award Heartland the full amount requested for attorneys' fees, but only $20,000 for the contempt violations.

**BACKGROUND**

Heartland filed a complaint on June 22, 2006, alleging that defendant Merchant Services of America, Corp. ("MSA") committed various violations of 15 U.S.C. § ("Section") 1051, <u>et seq.</u> ("Lanham Act"), including trademark infringement, Sections 1114(1) and 1116(d), and unfair competition, Sections 1125(a)(1)(A) & (B). (Dkt. entry no. 1.)  Heartland is engaged in the business of "processing electronically transmitted electronic credit and debit card transactions for businesses." (<u>Id.</u> at 2.)  Heartland alleges that MSA was unlawfully contacting Heartland's customers in order to "represent that it provides warranty services on the processing equipment supplied [by Heartland] to merchants." (<u>Id.</u> at 4.)  MSA would then advise the Heartland customer that if it did not forward payment to MSA for warranty services, then its ability to process credit and debit card payments would be terminated. (<u>Id.</u>)

Both of the parties consented to a temporary restraining order ("TRO"), which was issued by the Court on July 19, 2006, and prohibited MSA from (1) "Offering for sale, sale, advertising or promoting in the United States of credit and debit card equipment warranty services any other services of any kind using, referring to or bearing plaintiff's company name 'Heartland Payment Systems,'" (2) "Making any statements, representations or

2

references of any kind, orally or written, to any person that causes confusion, deception or mistake as to the affiliation, connection or association of Defendant and its goods and/or services with Plaintiff or its goods and/or services," or (3) "Using Plaintiff's company name or the HPS Mark in any manner in any communication with any entity." (Dkt. entry no. 8.) Heartland subsequently moved to hold MSA in contempt of the TRO, prompting the Court to issue an order to show cause as to why MSA should not be held in contempt of the TRO.  (Dkt. entry nos. 15 & 17.)

Heartland thereafter amended the complaint to name Michael Mouyal, the incorporator, president, and sole shareholder of MSA, as a defendant.  (Dkt. entry no. 18; see dkt. entry no. 39-1, Def. Br., at 3.)  On August 22, 2006, the Court entered a final judgment with permanent injunction in favor of Heartland against MSA and Mouyal.  (Dkt. entry no. 27.)  The final judgment also directed MSA to pay Heartland $10,000 for its violation of the TRO, and denied Heartland's application for an award against Mouyal individually for violating the TRO.  (Id. at 4.) Heartland's motion to hold Mouyal in contempt of the final judgment with permanent injunction is currently before the Court, as well as Heartland's motion for attorneys' fees and expenses. (Dkt. entry nos. 33 & 28.)  Pursuant to a stipulation and order entered by the Court on November 6, 2006, the parties agreed to the disposition of the motion and separate motion on the existing record and without an evidentiary hearing, and defendants

3

withdrew their motion to amend the final judgment.  (Dkt. entry
no. 47.)

## DISCUSSION

I.   **Heartland's Request for Attorneys' Fees**

A.   **Attorneys' Fees Under the Lanham Act**

Attorneys' fees and expenses may be awarded to a prevailing
party where authorized by statute, court rule, or contract.
Apple Corps Ltd. v. Int'l Collectors Soc'y, 25 F.Supp.2d 480, 484
(D.N.J. 1998).  The Court may award attorneys' fees to the
prevailing party in "exceptional" cases under the Lanham Act.  15
U.S.C. § 1117(a).  When the prevailing party is the plaintiff, "a
district court must make a finding of culpable conduct on the
part of the losing party, such as bad faith, fraud, malice, or
knowing infringement, before a case qualifies as 'exceptional.'"
Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d
Cir. 1991).  The culpable conduct warranting a fee award
generally, but not always, involves a "willful" violation.  Id.
The unavailability or lack of actual damages as a remedy does not
preclude recovery for attorneys' fees.  Int'l Star Class Yacht
Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753
(2d Cir. 1996).

A prevailing party is "one who has been awarded some relief
by the court" through a court-ordered "material alteration of the
legal relationship of the parties." Buckhannon Bd. & Care Home,

4

Inc. v. W. V. Dep't of Health & Human Res., 532 U.S. 598, 604
(2001) (citations and quotations omitted) (rejecting the
"catalyst theory" of who constitutes a prevailing party).  A
court order provides the appropriate basis for awarding
attorneys' fees to the prevailing party where it "contains
mandatory language" and "bears the signature of the District
Court judge, not the parties' counsel."  Truesdell v. Phila.
Hous. Auth., 290 F.3d 159, 165 (3d Cir. 2002) (holding that
plaintiff was a prevailing party within the meaning of 42 U.S.C.
§ 1988).[2]  Settlement agreements enforced through a consent
decree, even where they do not include an admission of liability
by the defendant, may serve as the basis of an award of
attorneys' fees.  Buckhannon, 532 U.S. at 604.

The final judgment consented to by the parties and entered
by the Court here provides a basis for awarding attorneys' fees
under 15 U.S.C. § 1117(a) to Heartland as the prevailing party.
(See dkt. entry no. 27.)  The order was signed by the District
Court Judge and used "mandatory language" permanently enjoining

---

[2]     Although Heartland seeks attorneys fees pursuant to a
different statute than the parties seeking fees in Buckhannon and
Truesdell, "the standards used to interpret the term prevailing
party under any given fee-shifting statute are generally
applicable in all cases in which Congress has authorized an award
of fees to a prevailing party."  Roberson v. Giulani, 346 F.3d
75, 79 n.3 (2d Cir. 2003) (holding that plaintiffs were a
prevailing party for purposes of attorneys' fees action brought
under 42 U.S.C. § 1988, where "they resolved their dispute with
defendants through a private settlement agreement over which
district court retained enforcement jurisdiction").

and refraining defendants from all of the activities prohibited by the TRO, supra, as well as committing any act likely to cause confusion or association of defendants with Heartland or communicating directly or indirectly in any manner with Heartland customers. (Id. at 1-2.)  The order also required defendants to publish at their own expense a "Legal Notice" stating, inter alia, that MSA had committed acts "infringing Heartland's registered name and trademark in violation of federal law." (Id. at 3.)  The Court ordered MSA to pay Heartland $10,000 for its violation of the TRO and granted Heartland leave to file an application for an award of attorneys' fees. (Id. at 4.)

The Court finds that this is an "exceptional" case under the Lanham Act warranting attorneys' fees.  Heartland asserts that "the entire premise of the defendants' business operation was the misuse and infringement of Heartland's trademark rights." (Dkt. entry no. 28, Pl. Br., at 22.)  Defendants argue the case is not "exceptional" because "there is no proof that MSA or []Mouyal willfully and deliberately infringed upon the trademark of plaintiff." (Dkt. entry no. 38, Def. Br., at 6.)  According to defendants, "[a]t most, there may have been a lack of supervision of the corporation that it contracted with to provide marketing services." (Id.)  Defendants do not offer, however, any evidence beyond Mouyal's certification in support of the theory that the warranty telemarketing scheme experienced by Heartland's

customers was orchestrated by independent contractors hired by MSA and acting without the direction or knowledge of Mouyal.

The evidence shows that defendants' infringement upon Heartland's trademark was willfull and deliberate.  The legal notice published by defendants pursuant to the final judgment is effectively an admission that the telemarketing scheme targeted Heartland customers and infringed upon Heartland's trademark.[3] Even if defendants had not made such an admission, Heartland has provided the Court with certifications from its customers targeted by defendants' telemarketing scheme as well as from its employees who dealt with those customers and MSA, documenting

_____

[3]     The "Legal Notice" that defendants agreed to publish at their own cost and expense in two restaurant business publications pursuant to ¶ G of the final judgment provides:

> The following notice appears by order of the United States District Court for the District of New Jersey.  Merchant Services of America Corp. ("MSA"), a Florida telemarketing company, has solicited restaurants around the country for its equipment warranty services, in doing so, it has represented that it is, or was, in some way affiliated with or authorized by Heartland Payment Systems, Inc., ("Heartland") thereby, among other things, infringing Heartland's registered name and trademark in violation of federal law. MSA is not now, and never was, affiliated in any way with Heartland or authorized to use its name or trademark.  Heartland's merchant customers do not need to purchase anything from MSA.  MSA does not have the ability to terminate any merchant customer's credit or debit card processing. If you are a Heartland merchant customer and you are or have been contacted by MSA, please contact Heartland at 800-801-5022.

The parties subsequently stipulated that defendants' publication of the legal notice in one print edition of Nation's Restaurant News satisfied the final judgment.  (Dkt. entry no. 48.)

defendants' willfull infringement.  (See dkt. entry nos. 7, 15, 18, 25, 28, and 33 and accompanying certifications.)  The certifications confirm MSA told Heartland customers that it was authorized to extend the warranties on their Heartland equipment. Heartland customers were directed to send their payments to MSA's office in Princeton, New Jersey, conveniently the same town where Heartland's principal place of business is also located.  (Dkt. entry no. 18, Ex. H, "Warranty Invoice"; Compl., at 1.)  Despite the Princeton address, MSA is incorporated in Florida, and is not licensed to do business in New Jersey.  (Dkt. entry no. 18, Exs. I, J.)  This evidence leads to no other conclusion than Mouyal intentionally and willfully portrayed MSA as being affiliated with or authorized to represent Heartland in order to receive payments from Heartland's customers.

The bad faith of defendants is illustrated by their continuance of the infringing telemarketing scheme in violation of the preliminary injunction and TRO entered by the Court. (Dkt. entry no. 27, at 4.)  See Shields v. Zuccarini, 254 F.3d 476, 487 n.7 (3d Cir. 2001) (awarding attorneys' fees under Section 1117(a) where defendant registered 1,655 infringing domain names between issuance of preliminary injunction and date of hearing on statutory damages and attorneys' fees), Choice Hotels Int'l Inc. v. Pennave Assocs. et al., 159 F.Supp.2d 780, 786 (E.D.Pa. 2001) (awarding attorneys' fees where defendant

continued infringing conduct even after he was aware it was
unlawful).  Defendants' willfull infringement and lack of remorse
is further evidenced by Mouyal's decision to sell the
telemarketing business rather than shut down all operations as
ordered by the Court in the final judgment.  (Dkt. entry no. 39-
2, "Sale-Purchase Agreement.")  See Knorr-Nahrmittel A.G. v.
Reese Finer Foods, Inc., 695 F.Supp. 787, 795-96 (D.N.J. 1988)
(awarding attorneys' fees for trade dress violation where
defendant continued to sell and ship infringing items in spite of
the oral order of the court not yet reduced to writing and
signed).  The Court therefore concludes that defendants' conduct
rises to the requisite level of "bad faith, fraud, malice, or
knowing infringement" to make this an "exceptional case" under
the Lanham Act justifying an award of attorneys' fees to
Heartland.

**B.   Attorneys' Fees and the Lodestar Method**

The proper approach for determining an award of attorneys'
fees here is the lodestar approach, which requires multiplying
the number of hours reasonably expended by a reasonable hourly
rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983);
Loughner v. Univ. of Pitt., 260 F.3d 173, 177-78 (3d Cir. 2001);
P.G. v. Brick Twp. Bd. of Educ., 124 F.Supp.2d 251, 261 (D.N.J.
2000).  In determining the lodestar amount, the Court must
"carefully and critically evaluate the hours and the hourly rate

set forth by counsel." J & J Snack Foods, Corp. v. Earthgrains Co., No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003). The party seeking attorneys' fees has the burden to prove that the request is reasonable, and therefore must submit evidence to support the hours worked and the rates claimed. Id. The Court has discretion to decide which fees are reasonable, but cannot decrease a fee award based on factors not raised at all by the adverse party. Id. While the adverse party must raise any objections, that party need not challenge every specific time entry believed to be unreasonable. Id. The Court performs a three-step analysis under the lodestar method: We determine, considering Heartland's evidence and defendants' objections, (1) a reasonable hourly rate, (2) the number of hours reasonably expended, which we multiply by the reasonable hourly rate, and (3) whether any final adjustment is warranted. Id.

A reasonable hourly rate is calculated according to the prevailing market rates in the community. Washington v. Phila. County Ct. Com. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996). The party requesting fees bears the burden of "establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, that the requested hourly rates meet this standard." Id. (citation and quotations omitted). The prevailing party must demonstrate the community billing rate "charged by attorneys of equivalent skill and experience performing work of similar

10

complexity." P.G., 124 F.Supp.2d at 261 (citation and quotations omitted).  The party "normally satisfies this burden by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." Id. Once the party seeking fees has met this burden, "the opponent may contest the prevailing party's prima facie case only with record evidence." Id.  If the opponent fails to do so, the court may not reduce the requested rate.  Id.

The second step in the lodestar calculation requires the Court to determine what time was reasonably extended on the matter.  J & J Snack Foods, 2003 WL 21051711, at *8.  "Hours that are not reasonably expended – those which are excessive, redundant, or otherwise unnecessary – are not compensated by the court." Id.

The Court finds that Heartland is entitled to the full amount of the attorneys' fees and expenses requested.  Defendants do not adequately challenge Heartland's prima facie showing. Defendants failed to submit any affidavits or certifications concerning the proper prevailing rates and their sole objection to the fees requested by Heartland is a general averment that the fees are not reasonable.  The Court, therefore, will make no adjustments to the amount of attorneys' fees and expenses requested because (1) Heartland has met its burden to show that

11

such fees and expenses were reasonable and (2) defendants have
not shown that either the rates charged or the numbers of hours
expended by the firm were unreasonable.

### C.   Mouyal's Individual Liability for Attorneys' Fees

Heartland requests that the Court hold Mouyal individually
liable for attorneys' fees because he is the "sole, driving force
behind all of the unlawful conduct at issue in this case" and
"personally established the entire fraudulent scheme to solicit
Heartland's customers and to deceive them by violation of
Heartland's trademark rights."  (Dkt. entry no. 28, Pl. Br., at
15.)  Heartland asserts that as a corporate officer of MSA,
Mouyal can be held individually liable because he personally
participated in tortious acts of trademark infringement, whereas
defendants argue that Mouyal is not individually liable because
he was not directly involved in the infringing conduct.  (Id.;
dkt. entry no. 38, Def. Br., at 7.)

"A corporate officer is individually liable for the torts he
personally commits and cannot shield himself behind a corporation
when he is an actual participant in the tort." Donsco v. Casper
Corp., 587 F.2d 602, 606 (3d Cir. 1978).  The plain language of
the sections of the Lanham Act addressing trademark infringement
and unfair competition create individual liability for damages
under the Act because both sections begin with the language "Any
person who . . . ."  15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a)(1)
(emphasis added).  Under the Lanham Act an employee is not
shielded from individual liability solely because the infringing

actions were within the scope of their employment.  Metromedia
Steakhouses Co., L.P. v. Resco Mgmt., Inc., 168 B.R. 483, 486
(D.N.H. 1994).  "The fact that the persons . . . are acting for a
corporation . . . may make the corporation liable under the
doctrine of respondeat superior.  It does not relieve the
individuals of their responsibility."  Mead Johnson & Co. v.
Baby's Formula Serv., Inc., 402 F.2d 19 (5th Cir. 1968) (holding
corporate officer individually liable for trademark infringement).

     A trademark is infringed by an individual who "performs the
act or does the things that the patent or trademark law protects
against. . . .  [I]f there was an infringement by the
corporation, this infringement was caused by some one or more
persons either officers or employees of the corporation who
caused the acts to be done."  Id.; see Brandywine Mushroom Co. v.
Hockessin Mushroom Prods., Inc., 682 F.Supp. 1307, 1312 (D.Del.
1988) (denying motion for summary judgment as to individual
defendant because there was sufficient evidence that she was an
"active participant" in the trademark infringing sales).  In
Donsco, the Third Circuit Court of Appeals held that a corporate
president was individually liable where he "authorized and
approved the acts of unfair competition" that were the basis for
the corporation's liability.  587 F.2d at 606.

     The evidence demonstrates Mouyal's direct involvement in the
infringing activities and that as the incorporator and sole
shareholder for MSA he authorized and approved any acts in which

he did not directly participate.  And even if the Court were to believe Mouyal's explanation that the telemarketing scheme was created and implemented by a separate entity, ENetwork, that MSA hired to provide marketing services, MSA and Mouyal would still be liable pursuant to the doctrine of apparent authority.  Under this theory of liability,

> when a principal authorizes its independent contractor agent to conduct and conclude a transaction with third parties on the principal's own behalf, and the principal benefits financially from the contracts, the principal will be liable in an action brought pursuant to section [1125(a)] of the Lanham Act based on the agents' foreseeable infringing actions upon which it would be reasonable for the third party to rely, provided the third party had no notice that the representations are unauthorized.

Am. Telephone & Telegraph Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1438 (3d Cir. 1994) (holding that phone company's sales representatives were independent contractors and that remand was required to determine whether they acted with apparent authority of phone company to commit Lanham Act violations).

Liability is imposed under the doctrine of apparent authority "because of the actions of the principal or an employer in somehow misleading the public into believing that the relationship or the authority exists."  Id. at 1440.  The court in American Telephone noted that liability based on agency principles is often appropriate to achieve the Lanham Act's "broad purpose" of "protecting . . . competitors from a wide

14

variety of misrepresentations of products and services." <u>Id.</u> at 1433-34 (citation and quotations omitted).

Mouyal cannot avoid liability by attributing the entire telemarketing scheme to the employees of ENetwork, which he characterizes as MSA's "marketing agency."  Mouyal is directly responsible for leading Heartland customers "into believing that the relationship or the authority exist[ed]" for MSA to act on behalf of Heartland because he created and perpetuated the misrepresentation that MSA was authorized to extend the customers' warranties on Heartland's equipment.  Mouyal can therefore in the alternative also be held liable through a theory of apparent authority, thereby refuting the only argument against liability for the Lanham Act violations presented.

## II.  Heartland's Motion to Hold Mouyal in Contempt

The final judgment entered by the Court on August 22, 2006, permanently enjoined MSA and Mouyal from any further infringement upon Heartland's trademark or knowingly communicating with any Heartland customers.  Heartland asserts that Mouyal violated the terms of this agreement because Heartland customers continued to be solicited following entry of the final judgment in the same manner as Heartland customers had been solicited by MSA before. (Dkt. entry no. 33-1, Pl. Br., at 5.)  More specifically, Heartland alleges that Mouyal has violated paragraphs A, B, C, D, E, H and I of the final judgment:

15

A.     Offering for sale, selling, advertising or
promoting in the United States of any product or
service of any kind using, referring to or bearing
plaintiff's company name "heartland Payment Systems" or
its federally registered trademark "Heartland Payment
Systems" (USPTO Registration Number 2742163) (the "IIPS
Mark") or any portion thereof;

B.     Making any false advertisements, statements or
designation or origin or false description or
representation or any other thing that causes confusion
or deceives anyone into believing that Defendants'
business an services are in any way associated or
affiliated with or related to Plaintiff or Plaintiff's
business;

C.     Infringing upon the IIPS Mark or competing
unfairly with Plaintiff, injuring its business
reputation, or diluting the distinctive quality of its
trademark;

D.     Committing any act calculated or likely to cause
confusion, deception or mistake as to the affiliation,
connection or association of Defendants and their goods
and/or services with Plaintiff or its goods and/or
services;

E.     Knowingly communicating directly or indirectly in
any manner with HPS merchants or customers wherever
located;

. . . .

H.     No later than noon on August 21, 2006,
Defendants, MSA and Michael Mouyal will discontinue all
business operations relating to the solicitation and
sale of extended warranties on credit and debit card
processing terminal equipment in the United States;

I.     By the same date, Defendants shall terminate the
lease as the premises located at 100 Overlook Centre,
Princeton, New Jersey and leave a forwarding address for
mail delivery.

Mouyal argues that he is not responsible for any phone calls following entry of the final judgment because he sold MSA on August 31, 2006. (Dkt. entry no. 39, Def. Br., at 2.)[4]

On September 11, 2006, a person identifying himself as "Mr. Acosta" called Pedro Gomez, the manager of El Napolito restaurant in Louisville, KY. (Dkt. entry no. 33, Certification of Pedro Gomez ("Gomez Cert.").) Acosta stated that he was calling from Heartland and that if Gomez did not pay $179.00 to renew the warranty on the restaurant's credit and debit machine within one hour, it would stop working. (Gomez Cert., at ¶ 4.) Gomez refused to pay anything and Acosta called him a second time ten minutes later stating that the restaurant had to renew the warranty. (Id. at ¶ 7.) Gomez became suspicious and telephoned his Heartland representative, Linda Blanton, informed her of the situation and gave her the telephone number that Acosta had given him. (Id. at ¶ 11.) Blanton confirmed with Gomez that the call

_____

[4]    The remaining arguments asserted by Mouyal address the underlying violations of the Lanham Act admitted to by defendants in the final judgment and permanent injunction. The final judgment included language stating that MSA "has represented that it is, or was, in some way affiliated with or authorized by Heartland Payment Systems, Inc. . . . . thereby, among other things, infringing Heartland's registered name and trademark in violation of federal law." (Dkt. entry no. 27, at 3.) "[A]dmission of trademark infringement in a consent judgment functions as waiver of the right to submit evidence on that issue in contempt proceedings." Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 146 (3d Cir. 1994). The Court, therefore, will reject Mouyal's arguments to the extent they re-visit MSA's admission of infringement.

was not from Heartland and that he should not pay any money to
the caller.  (Id.)

    After Gomez's call, Blanton contacted Sherry Hall, a
terminal specialist at Heartland.  (Dkt. entry no. 33,
Certification of Linda Blanton ("Blanton Cert."), at ¶ 7.)  Hall
called the telephone number Gomez provided to Blanton and heard a
message welcoming her to "E-Merchant Supplies."  (Dkt. entry no.
33, Certification of Sherry Hall ("Hall Cert."), at ¶ 9.)  Hall
and Blanton called the number twice, both times being connected
to someone in Customer Service.  (Hall Cert., at ¶ 8; Blanton
Cert., at ¶¶ 12-13.)  Hall informed the persons on the other end
of the line that their company was fraudulently representing
itself as Heartland to Heartland's customers, and that she was
going to report them to the Attorney General's office.  (Id.)

    The Court's authority to find Mouyal in contempt arises
under 18 U.S.C. § 401, which provides that:

> A court of the United States shall have power to punish
> by fine or imprisonment, or both, at its discretion,
> such contempt of its authority, and none other, as--
>
> **(1)** Misbehavior of any person in its presence or so
> near thereto as to obstruct the administration of
> justice;
>
> **(2)** Misbehavior of any of its officers in their
> official transactions;
>
> **(3)** Disobedience or resistance to its lawful writ,
> process, order, rule, decree, or command.

18

In order to support a finding of contempt, Heartland must
establish by clear and convincing evidence that Mouyal's conduct
was in violation of the terms of the final judgment and permanent
injunction.  See Harley Davidson, Inc., 19 F.3d at 146.  A
defendant will not be adjudged to be in contempt "where there is
ground to doubt the wrongfulness of the conduct." Robin Woods,
Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994).

"[S]ubstantial compliance with a court order is a defense to
an action for civil contempt. . . .  If a violating party has
taken all reasonable steps to comply with the court order,
technical or inadvertent violations of the order will not support
a finding of civil contempt." Id.  Good faith, however, is not a
defense and willfulness is not a necessary element of civil
contempt. Id.

Heartland has established by clear and convincing evidence
that Mouyal violated the conditions of the final judgment with
permanent injunction.  In addition to the aforementioned
certifications from Heartland employees and customers documenting
the infringing actions, Heartland provided a copy of the
registration for E-Merchant Supplies in Florida, dated June 3,
2005, which lists Mouyal as the owner.  (Dkt. entry no. 33, Ex.
B.)  This evidence sufficiently refutes Mouyal's argument that he
was not responsible for or in any way connected to the violating
phone call from E-Merchant Supplies on September 11, 2006.

19

The only evidence presented by Mouyal in support of his argument is a copy of the "Sale-Purchase Agreement" presented by Mouyal as evidence that he sold MSA to a company called "MS Merchant Services of America S.A." incorporated in the Dominican Republic.  (Dkt. entry no. 39-2.)  This document is insufficient to rebut the evidence presented by Heartland that it was E-Merchant supplies, a corporation owned by Mouyal, and not some other corporation, who called Gomez and therefore violated the provisions of the final judgment and permanent injunction.

Heartland asks the Court to order Mouyal to pay Heartland $70,000, $10,000 for each of the seven sections of the final judgment violated by Mouyal.  (Dkt. entry no. 33, Pl. Br., at 9-10.)  The Court finds it more appropriate to order Mouyal to pay Heartland $20,000, $10,000 for each of the two phone call solicitations made by E-Merchant Supplies to Gomez.  (See id. at 9.)

**CONCLUSION**

For the reasons stated in this memorandum opinion, the Court will grant Heartland's motion for attorneys' fees and expenses as well as its separate motion to hold Mouyal in contempt of the final judgment and permanent injunction.  The Court will award the full amount of attorneys' fees requested, $160,979.11, and order Mouyal to pay $20,000 for the contempt violations.  The Court will issue an appropriate order and judgment.[5]


                                        s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge

---

[5]    The Court will deny as moot defendant MSA's motion to strike. (Dkt. entry no. 51.)